IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

SONYA MICHELLE PITTMAN,       )
                              )
          Petitioner,         )
                              )       CIVIL ACTION NO.
v.                            )       1:18-CV-458-KKD-CSC
                              )            [WO]
UNITED STATES OF AMERICA,     )
                              )
          Respondent.         )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.   INTRODUCTION

Sonya Michelle Pittman is before the Court with a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. CIV. Doc. 1.[1] For the reasons discussed below, the Court finds Pittman's § 2255 motion should be denied without an evidentiary hearing and dismissed with prejudice.

### II.   BACKGROUND

On March 2, 2015, Pittman pled guilty under a plea agreement to possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). CRIM. Doc. 87. After a sentencing hearing on July 30, 2015, the district court

---

[1] References to document numbers assigned by the Clerk of Court in this civil action are designated as "CIV. Doc.," while references to document numbers assigned by the Clerk of Court in the underlying criminal case (CASE NO. 1:14-CR-510) are designated as "CRIM. Doc." Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

sentenced Pittman to 20 years in prison. CRIM. Doc. 90. Pittman appealed,[2] and on September 20, 2017, the Eleventh Circuit affirmed her conviction and sentence. *United States v. Pittman*, 718 F. App'x 767 (11th Cir. 2017); *see* CRIM. Doc. 94.

On May 3, 20128, Pittman filed this § 2255 motion asserting the following claims:

1. Counsel was ineffective for failing to raise an "entrapment/sentencing entrapment" defense as a basis for a motion to suppress the evidence.

2. Counsel was ineffective for failing to move to suppress the evidence based on law enforcement's unlawful entry of Pittman's residence.

3. Counsel was ineffective for failing to have a mental health professional evaluate Pittman before she entered a guilty plea.

4. Counsel was ineffective for failing to object to the disparity between Pittman's sentence and the treatment of another individual.

5. Counsel was ineffective for failing to challenge the purity of the drugs seized from Pittman's residence or to challenge the chain of custody.

6. Counsel was ineffective for assuring Pittman she would receive a sentence reduction if she proffered to the government.

7. Counsel was ineffective for failing to investigate Pittman's cooperation with the government and for not having her cooperation "made known."

8. Counsel was ineffective for failing to present evidence at sentencing regarding Pittman's cooperation with the government.

9. Counsel was ineffective for failing to argue prosecutorial misconduct.

10. The U.S. Attorney engaged in prosecutorial misconduct by failing to file a substantial-assistance motion for downward departure based on Pittman's cooperation with the government.

---

[2] On appeal, Pittman argued that the district court plainly erred when it failed to find that the government breached her plea agreement by not filing a substantial-assistance motion under 18 U.S.C. § 3553(e). Alternatively, Pittman asserted that the district court plainly erred by failing to require the government to definitively state that it was exercising its discretion to not file a substantial-assistance motion in her case.

11. The U.S. Attorney engaged in prosecutorial misconduct by failing to provide details concerning Pittman's cooperation with the government, including the arrest of a certain individual, which resulted from Pittman's cooperation and amounted to substantial assistance.

CIV. Doc. 1 at 4–21.

## III.  DISCUSSION

### A.  General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.  Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1.   Failure to Raise "Entrapment/Sentencing Entrapment" Defense

Pittman claims her counsel was ineffective for failing to raise an "entrapment/sentencing entrapment" defense as a basis for a motion to suppress the government's evidence. CIV. Doc. 1 at 4.

Addressing this claim, Pittman's trial counsel, Donnie Bethel, states:

> In reviewing the discovery, I saw no evidence of entrapment. Petitioner did not raise with me the issue of entrapment. . . . Because I saw no evidence of entrapment, I did not file a motion to suppress on that ground.

CIV. Doc. 5 at 1–2.

Pittman's pleadings contain little explanation why Bethel should have pursued an entrapment defense. She points to no facts showing how the government induced her to commit her crime or that she lacked the predisposition to distribute controlled substances. *See United States v. Sistrunk*, 622 F.3d 1328, 1333 (11th Cir. 2010) (entrapment defense requires showing governmental inducement of the crime and lack of predisposition by defendant). Pittman alludes only vaguely to assisting a law enforcement officer who, she says, had persuaded her to "get back in the game." CIV. Doc. 1 at 4.

Nor does Pittman show that the government engaged in conduct intended to manipulate her to make drug sales in amounts necessary to trigger a statutory minimum, or to cause an enhancement of her offense level. *See United States v. Combs*, 827 F.3d 790,

796–97 (8th Cir. 2016); *United States v. Docampo*, 573 F.3d 1091, 1097–98 (11th Cir. 2009). "[S]entencing factor manipulation occurs when the government's manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus. *United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007). Sentencing factor manipulation focuses on the government's conduct. *See Docampo*, 573 F.3d at 1097. For there to be sentencing factor manipulation, "the government must engage in extraordinary misconduct." *United States v. Haile*, 685 F.3d 1211, 1223 (11th Cir. 2012).

As set forth in the presentence investigation report ("PSR"), Pittman was known to sell methamphetamine in southeastern Alabama, and she had previously been convicted of methamphetamine distribution. CRIM. Doc. 61 at 4, ¶¶ 13–14; *id*. at 10, ¶ 43. On August 1, 2014, an informant working with the DEA purchased approximately 59 grams of methamphetamine from Pittman and observed Pittman in possession of approximately 3 or 4 additional ounces of methamphetamine. *Id*. at 4–5, ¶¶ 13–14. On August 13, 2014, DEA special agents and task force officers executed a search warrant at Pittman's Elba, Alabama residence. *Id.* at 5, ¶ 15. In the search, the special agents and task force officers found additional distribution amounts of methamphetamine and a firearm. *Id.* at 5, ¶¶ 15–16. Pittman later admitted to investigators that she was buying and selling methamphetamine. *Id*. at 5–6, ¶¶ 16–18.

On this record, Pittman fails to show it was professionally unreasonable for her counsel not to raise an entrapment defense—whether as to her commission of the crime or the amount of drugs attributed to her. Nor does she show any reasonable likelihood that an

entrapment defense would have succeeded. Therefore, she is entitled to no relief based on this claim of ineffective assistance of counsel.

### 2.   *Failure to Challenge Unlawful Entry of Residence*

Pittman claims Bethel rendered ineffective assistance of counsel by failing to move to suppress the evidence based on law enforcement's unlawful entry of her residence. CIV. Doc. 1 at 5, 19. According to Pittman, law enforcement agents "never knocked or announced" before entering her residence. *Id*. at 5.

Addressing Pittman's allegations, Bethel states: "The agents had a search warrant and I could find no legal basis to challenge the warrant, so I did not file a motion to suppress on that ground." CIV. Doc. 5 at 2.

There is no evidence that Pittman ever raised the knock-and-announce issue with Bethel, i.e. that she ever claimed to Bethel that law enforcement agents failed to knock and announce before entering her residence. And other than the conclusory allegation in Pittman's § 2255 motion, there is no evidence that law enforcement agents failed to knock and announce their presence at Pittman's door. Further, as set forth in the PSR, upon arriving at Pittman's residence to execute the search warrant, agents "observed a white male running from a wooded area into [Pittman's] residence." CRIM. Doc. 61 at 5, ¶ 15. The agents then made a forced entry into the residence. *Id.* As the government argues, the agents were in an exposed position outside the residence, and the white male could have been destroying evidence. CIV. Doc. 6 at 18. The knock-and-announce requirement "gives way when officers have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or would inhibit

the effective investigation of the crime by, for example, allowing the destruction of evidence." *United States v. Banks*, 540 U.S. 31, 36 (2003) (citations omitted). "[I]f circumstances support a reasonable suspicion of exigency when the officers arrive at the door, they may go straight in." *Id*. at 37.

Where a claim of ineffective assistance of counsel stems from counsel's failure to file a suppression motion, the defendant must show that underlying constitutional claim has merit. *See Green v. Nelson*, 595 F.3d 1245, 1251–52 (11th Cir. 2010). A defendant must establish prejudice where counsel failed to file a motion. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). Here, Pittman fails to allege facts that suggest Bethel had reason to believe he should file a suppression motion premised on the alleged failure of law enforcement agents to knock and announce before entering Pittman's residence. Nor has Pittman alleged facts demonstrating a reasonable likelihood that, had Bethel challenged law enforcement's entry of her residence, litigation of that issue would have resulted in the suppression of the government's evidence. Because she fails to establish deficient performance by counsel or resulting prejudice, Pittman is entitled to no relief on this claim.

### 3.   *Failure to Seek Mental Evaluation*

Pittman claims Bethel was ineffective for failing to have a mental health professional evaluate her before she entered a guilty plea. CIV. Doc. 1 at 7. Pittman argues that due to her background, including recent physical abuse, Bethel should have had her mental health examined. *Id.* She further asserts that, after her sentencing and arrival at a correctional institution, she was examined and diagnosed with PTSD and depression. *Id.*

According to Pittman, her mental health issues prevented her from understanding the consequences of her guilty plea, which she characterizes as a "blind plea." *Id.*

> Addressing Pittman's claim, Bethel states:
>
> Petitioner alleges I was ineffective for failing to have a mental health professional evaluate Petitioner prior to her entering a plea of guilty. I did not ask the Court to have Petitioner evaluated because I saw nothing that suggested to me that Petitioner was not competent. Petitioner mentions signing a "blind" plea. Petitioner did not plead blind, but did so pursuant to a plea agreement.

CIV. Doc. 5 at 2.

"Incompetency means 'suffering from a mental disease or defect rendering [a defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (quoting 18 U.S.C. § 4241(a)). To show entitlement to an evidentiary hearing on a competency claim, a petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." *Johnson v. Singletary*, 162 F.3d 630, 637 (11th Cir. 1998) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)). "This standard of proof is high; and 'the facts must positively, unequivocally, and clearly generate the legitimate doubt.'" *Battle*, 419 F.3d at 1299 (quoting *Medina*, 59 F.3d at 1106). To actually prevail on such a claim, the petitioner must prove by a preponderance of the evidence that he was in fact incompetent to stand trial. *Johnston*, 162 F.3d at 637 n.7; *see also Battle*, 419 F.3d at 1298–99; *Medina,* 59 F.3d at 1106.

Pittman fails to present facts that "positively, unequivocally, and clearly generate a legitimate doubt" about her competency to assist in her defense, stand trial, or enter a knowing and voluntary guilty plea. She fails to show that her background of abuse and alleged mental health issues affected her ability to understand the consequences of her guilty plea. And she fails to establish how a mental evaluation would have uncovered evidence demonstrating that she was incapable of entering a knowing and voluntary guilty plea. Consequently, she does not show that Bethel performed deficiently by failing to have her mental health evaluated or that she was prejudiced by Bethel's failure to do so. She is entitled to no relief on this claim of ineffective assistance of counsel.

### 4.   *Failure to Object to Sentencing Disparity*

Pittman claims Bethel was ineffective for failing to object to the disparity between her sentence and the treatment of an individual named Roy Dale Wallace. CIV. Doc. 1 at 8. According to Pittman:

> Wallace, who was on federal probation, was arrested in [the] same district some months before I was with several ounces of ICE. He assisted, gave info to DEA Neil Thompson same as me. He has much greater criminal history. Been to federal prison at least 3 times. Yet he is at home. I am in prison. Same district, same DEA agent. Huge difference.

CIV. Doc. 1 at 8.

> Addressing Pittman's claim, Bethel states:

> Petitioner alleges I was ineffective for "not raising disparity between [Petitioner] and Roy Dale Wallace." Mr. Wallace was not a codefendant with Petitioner, so I did not have discovery from Mr. Wallace's case. Any disparity argument would have been raised at sentencing. I did not represent Petitioner at sentencing.

CIV. Doc. 5 at 2.

Pittman's counsel at sentencing was Russell Duraski. Although Duraski, like Bethel, filed an affidavit with the Court addressing Pittman's claims of ineffective assistance of counsel (*see* CIV. Doc. 3), Duraski does not specifically address Pittman's sentencing-disparity claim, probably because Pittman's § 2255 motion directed the claim only to Bethel. In any event, Pittman fails to show that either Bethel or Duraski rendered ineffective assistance by failing to raise a sentencing-disparity claim.

To prevail on a claim regarding sentencing disparities, a petitioner must show not only a disparity in sentencing, but that he was similarly situated to another defendant. *United States v. McNair*, 605 F.3d 1152, 1232 (11th Cir. 2010). "That requires identifying (1) a specific defendant, (2) with a similar record to the defendant being sentenced, (3) who has been found guilty of similar criminal conduct." *United States v. Espinoza*, 550 F. App'x 690, 694 (11th Cir. 2013).

Here, Pittman does not specify the criminal charges, if any, for which Wallace was arrested; does not establish that Wallace was convicted of the alleged conduct; and does not establish that she cooperated with authorities to the same extent as Wallace. Therefore, Pittman fails to demonstrate she was found guilty of criminal conduct similar to that of Wallace or that she and Wallace were similarly situated. Consequently, she does not show that her counsel performed deficiently by failing to raise a sentencing-disparity claim or that she was prejudiced by counsel's failure to do so. She is not entitled to relief on this claim of ineffective assistance of counsel.

### 5. *Failure to Challenge Drug Purity and Chain of Custody*

Pittman claims Bethel was ineffective for failing to challenge the purity of the drugs seized from her residence or to challenge the chain of custody of the drugs. CIV. Doc. 1 at 14, 19. According to Pittman, the drugs seized from her residence were "not real," i.e., were not actually methamphetamine. *Id.* at 14.

Addressing Pittman's claim, Bethel states:

Petitioner alleges I was ineffective because I did not challenge the purity of the methamphetamine seized from her residence or challenge the chain of custody. In reviewing the discovery, I reviewed a United States Department of Justice laboratory report that established the purity of the methamphetamine as greater than 96%. I saw nothing in the discovery that suggested there were any issues with the chain of custody. Had the case proceeded to trial, I would have considered having the methamphetamine tested independently. However, with Petitioner's consent I negotiated a plea agreement on her behalf.

CIV. Doc. 5 at 2.

As set forth in the PSR, an informant working with the DEA purchased approximately 59 grams of methamphetamine from Pittman on August 1, 2014, and observed Pittman in possession of approximately 3 or 4 additional ounces (85.05 grams) of methamphetamine. CRIM. Doc. 61 at 4–5, ¶¶ 13–14. Two weeks later, in the search of Pittman's residence, an additional 74.8 grams of methamphetamine were seized, as were 350.5 grams of "Ice," highly pure methamphetamine.[3] *Id.* at 5–6, ¶¶ 15, 16, 18. The forensic analysis revealed that the Ice had a purity of 96.8%. *Id.* at 5–6, ¶¶ 15, 16, 18, 20.

---

[3] "Ice, "sometimes called "crystal meth," is a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity. U.S.S.G. § 2D1.1(c) note (C); *see, e.g., United States v. Patterson*, 713 F. App'x 916, 917 (11th Cir. 2017).

The other quantities of methamphetamine were not analyzed before Pittman's decision to plead guilty. *Id.*

Pittman fails to show that the unanalyzed quantities of methamphetamine were "not real." More importantly, the 350.5 grams of "Ice" seized from her residence, which forensic analysis showed had a purity of 96.8%, was sufficient to show she was dealing in "real" methamphetamine. Further, that drug amount (of Ice) standing alone supported the charge to which Pittman pled guilty—possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Because the government gave Pittman notice under 21 U.S.C. § 851 of its intent to rely on her previous conviction for methamphetamine distribution to enhance her sentence,[4] Pittman was subject to a mandatory minimum term of 240 months' imprisonment. CRIM. Doc. 61 at 14, ¶ 65; *see* 21 U.S.C. § 841(b)(1)(A). The district court sentenced Pittman to the 240-month statutory minimum. Thus, the unanalyzed quantities of methamphetamine ultimately had no part in the sentence actually imposed on Pittman. Finally, Pittman points to no irregularities in the chain of custody of the drugs seized from her residence.

Pittman fails to demonstrate it was professionally unreasonable for Bethel not to challenge the purity of the methamphetamine seized from her residence or to challenge the chain of custody of the drugs. Further, she demonstrates no prejudice resulting from Bethel's performance. Therefore, she is entitled to no relief based on this claim of ineffective assistance of counsel.

---

[4] *See* CRIM. Doc. 5.

### 6. *Alleged Assurances Regarding Sentence Reduction*

Pittman claims Bethel rendered ineffective assistance of counsel by assuring her she would receive a sentence reduction if she proffered to the government. CIV. Doc. 1 at 14–15, 19. She maintains that Bethel "lied to her" to get her to plead guilty and that Bethel's misleading assurances of a sentence reduction induced her to plead guilty when she otherwise would have opted to go to trial. *Id.*

Addressing Pittman's allegations, Bethel states:

Petitioner alleges I was ineffective because I lied to her get her to plead guilty and I told her she would receive a sentence reduction if she proffered. I did not lie to Petitioner nor did I tell her she would definitely receive a reduced sentence. I repeatedly told Petitioner that the prosecutor would file a motion for a downward departure only if Petitioner provided information during the proffer that the prosecutor determined to be of material assistance to the Government.

CIV. Doc. 5 at 3.

The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A petitioner alleging ineffective assistance in this context must establish that counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process." *Hill*, 474 U.S. at 59. To establish prejudice, then, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." *Id*. A mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have

proceeded to trial. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvantis,* 902 F.2d 489, 494 (7th Cir. 1990*)*; *see also Holmes v. United States*, 876 F.2d 1545 (11th Cir. 1989) (*Hill* does not require a hearing merely because a defendant asserts a claim of ineffectiveness of counsel when the record affirmatively contradicts the allegations).

Pittman and the government entered into a plea agreement in which Pittman agreed to plead guilty to Count 2 of the indictment. CRIM. Doc. 37. The parties filed a sealed addendum to the plea agreement that memorialized and contained Pittman's cooperation agreement with the government. CRIM. Doc. 38. The plea agreement addendum stated, in relevant part:

> Should Defendant complete the obligations contained within the Cooperation Agreement as set forth herein, the Government will move at sentencing for a downward departure pursuant to U.S.S.G. § 5K1.1 and Title 18, United States Code, Section 3553(e), to reflect Defendant's substantial assistance. Determination of whether Defendant has met the obligations to qualify for a reduction pursuant to U.S.S.G. § 5K1.1 and Title 18, United States Code, Section 3553(e), is at the sole discretion of the United States.

CRIM. Doc. 38 at 2, ¶ 2. The addendum recognized that Pittman had been interviewed by law enforcement "in an attempt to provide substantial assistance." *Id*. at 2, ¶ 3. As set forth in the addendum, the cooperation agreement stipulated that Pittman was required to

> cooperate fully and testify truthfully against any and all persons as to whom Defendant may have knowledge at the grand jury, trial, or whenever called upon to do so. Defendant understands that this agreement requires Defendant to be truthful and to testify truthfully whenever called upon. Defendant agrees to be available for the review of documents and other materials and for interviews by law enforcement officers and attorneys for the Government upon reasonable request and to fully and truthfully respond to all questions asked of Defendant by law enforcement officers and attorneys for the Government.

15

> [Pittman was also required to] fully and truthfully disclose to the Government everything Defendant knows about any and all documents and materials in Defendant's possession that relate to the violations charged in the Indictment and any other criminal violations in the Middle District of Alabama and elsewhere. Defendant agrees to submit to a polygraph examination conducted by the Government if requested to do so.

*Id*. at 3, ¶ 5.

Pittman specifically agreed to abide by the terms of the original plea agreement and the cooperation agreement." CRIM. Doc. 38 at 2, ¶ 4(a), (b). The cooperation agreement expressly warned that if Pittman "failed or should fail in any way to fulfill completely [her] obligations under this agreement, then the Government will be released from its commitment to honor all of its obligations to [Pittman], without [her] being allowed to withdraw the guilty plea." *Id*. at 3, ¶ 7. Pittman signed under an acknowledgement that she had read and understood the addendum. *Id*. at 4.

At Pittman's change of plea hearing, the magistrate judge who took Pittman's plea asked her if she had reviewed and discussed the plea agreement with Bethel and if she understood the plea agreement. CRIM. Doc. No. 87 at 4. Under oath, Pittman answered in the affirmative. *Id*. Pittman also affirmed she had discussed the charges against her with Bethel and that she was satisfied with Bethel's representation. *Id*. Pittman further affirmed that, other than the plea agreement, no one had made any promises or assurances to her to get her to plead guilty. *Id*. at 5. The magistrate judge advised Pittman of the statutory sentence for the count she was pleading guilty to, and also explained that the mandatory minimum sentence she faced if she had a prior drug felony conviction would be 20 years in prison. *Id*. at 6. Pittman stated that she understood this. *Id*. at 7.

"[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Pittman, who makes only cursory assertions regarding Bethel's alleged assurances that she would receive a sentence reduction, fails to meet her burden to rebut her own sworn statements that she understood the plea agreement and her possible sentence and that, other than the plea agreement, no one had made any promises or assurances to her to get her to plead guilty. Pittman effectively testified that she was not pleading guilty because of any assurances from Bethel that, for instance, she would definitely receive a sentence reduction. It is clear from the record that, when pleading guilty, Pittman understood she would qualify for a sentence reduction only if the government determined she had rendered substantial assistance sufficient to qualify for a reduction, and that the determination whether she qualified for the sentence reduction was solely at the government's discretion.

The Eleventh Circuit has held that the allegations of a § 2255 petitioner accompanied by his own affidavit are insufficient to mandate an evidentiary hearing in the face of a record contravening the defendant's affidavit. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) (stating that, where a defendant tenders only his own affidavit to counter previous directly inconsistent testimony regarding plea coercion, "[t]he district court is entitled to discredit [the] defendant's newly-minted story about being threatened when that story is supported only by the defendant's conclusory statements"); *see also Lynn*, 365 F.3d at 1239 ("Because the . . . affidavits submitted by

[the movant] amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied [the] § 2255 motion."). Here, Pittman demonstrates at most that she has had second thoughts about having pled guilty because the government did not move for a sentence reduction under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e).

Pittman fails to establish deficient performance by Bethel that led her to plead guilty when she otherwise would not have or that she was prejudiced by Bethel's performance. Therefore, she is entitled to no relief on this claim of ineffective assistance of counsel.

### 7.   *Failure to Investigate Cooperation with Government*

Pittman claims Bethel was ineffective for failing to investigate her cooperation with the government and for not "having it made known at some point as a fact." CIV. Doc. 1 at 15, 19.

Addressing this claim, Bethel states:

> Petitioner alleges I was ineffective for not investigating/confirming Petitioner's cooperation and arrests that were made of other defendants as a result of her cooperation. This is a matter that would have been raised at sentencing. I did not represent Petitioner at sentencing.

CIV. Doc. 5 at 3.

Pittman's § 2255 motion specifically directs this claim only to Bethel. As previously noted, however, Pittman's counsel at sentencing was Russell Duraski. In his affidavit filed with the Court, Duraski makes the following averments relevant to the present claim:

> The undersigned counsel shows that he was appointed to represent the Defendant after she had entered a plea of guilty in this matter.

Counsel shows that he discussed the possibility of a downward departure with the Assistant United States Attorney on several occasions. Ultimately the prosecution chose not to file such a motion.

In an effort to persuade the government to file a motion for the Defendant, the undersigned even went so far as to file a Sentencing Memorandum to justify a much lower sentence in the event the government agreed to file the Motion based upon Substantial Assistance.

At sentencing, the Court discussed this matter openly with the parties; however, the government declined to make the motion. The Defendant alleged in her petition that counsel was ineffective for failing to be prepared to argue about substantial assistance. The undersigned denies this allegation and shows that he did all he could to try to persuade the government to file the motion, but they simply declined.

CIV. Doc. 3 at 2 (paragraph numbering omitted).

In the sentencing memorandum that Duraski references in his affidavit, Duraski asserted that Pittman was hopeful the government would move for a downward departure under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) based on Pittman's substantial assistance and argued that Pittman had cooperated with law enforcement and provided information and assistance that qualified for such a motion. CRIM. Doc. 58 at 1. Based on Pittman's alleged cooperation and other factors, Duraski requested that the Court impose a sentence of 60 months, well below the 240-month statutory minimum.[5] *Id*. at 1–2.

Thus, the record establishes that, prior to Pittman's sentencing, Pittman's counsel, specifically Duraski, "made known" to the Assistant U.S. Attorney and the district court that Pittman had cooperated with the government by providing information and assistance

---

[5] Title 18 § 3553(e) provides that a sentencing court may impose a sentence below the statutory minimum to reflect a defendant's substantial assistance in the investigation or prosecution of another person, only "[u]pon motion of the Government." 18 U.S.C. § 3553(e).

to law enforcement, which Pittman believed amounted to "substantial assistance" qualifying her for a motion by the government under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), which, if filed, would have authorized the district court to impose a sentence below the statutory minimum. Further, Duraski's affidavit reflects that, prior to Pittman's sentencing, Duraski discussed the possibility of a downward departure with the Assistant U.S. Attorney on several occasions in an effort to persuade the government to file a § 5K1.1/§ 3553(e) motion based on Pittman's substantial assistance.

In light of the record evidence reflecting the extent to which Pittman's counsel argued on Pittman's behalf that she should receive a sentence reduction for her supposed substantial assistance, Pittman fails to show she was prejudiced by her attorneys' alleged failure (whether Bethel's or Duraski's) to investigate her cooperation with the government and for not having her cooperation "made known at some point as a fact." Pittman's supposed cooperation was made known to the party for whom it could have made the most difference to her—the Assistant U.S. Attorney—and the government declined to file a § 5K1.1/§ 3553(e) substantial-assistance motion. Failing to show deficient performance by counsel or resulting prejudice, Pittman is entitled to no relief on this claim of ineffective assistance of counsel.

### 8.   *Counsel's Failure to Present Evidence of Cooperation*

Pittman claims Duraski was ineffective for failing to present evidence at sentencing regarding her cooperation with the government. CIV. Doc. 1 at 16.

As established by Duraski's affidavit, and as evidenced in the sentencing memorandum filed by Duraski prior to the sentencing hearing, by the time Pittman's

sentencing hearing took place, Duraski had discussed a downward departure for Pittman with the Assistant U.S. Attorney on several occasions in an effort to persuade the government to file a § 5K1.1/§ 3553(e) motion based on Pittman's substantial assistance and had asked that the district court downwardly depart to a sentence of 60 months (well below the statutory minimum) if the government filed the hoped for substantial-assistance motion. The government simply declined to file the substantial-assistance motion. Absent such a motion, the district court was without authority to downwardly depart based on Pittman's supposed substantial assistance. Therefore, any argument by Duraski—or presentation of evidence—to the district court on this issue would have been unavailing.

Pittman also demonstrates no reasonable probability that the presentation of additional argument and evidence to the Assistant U.S. Attorney at sentencing would have resulted in the government reversing course by filing a substantial-assistance motion at the sentencing hearing, particularly given that the government knew any cooperation by Pittman prior to the sentencing hearing. Pittman does not establish the existence of evidence of her cooperation about which the government was unaware prior to her sentencing hearing.

The Court finds Pittman fails to show deficient performance by Duraski or any resulting prejudice. Therefore, Pittman is entitled to no relief on this claim of ineffective assistance of counsel.

### 9.   *Failure to Argue Prosecutorial Misconduct*

Pittman claims Bethel and Duraski rendered ineffective assistance of counsel by failing to argue prosecutorial misconduct premised on the government's failure to file a

§ 5K1.1/§ 3553(e) motion for downward departure based on Pittman's substantial assistance. CIV. Doc. 1 at 16–17.

Addressing this claim, Bethel states, "I did not raise prosecutorial misconduct because I saw no evidence of such." CIV. Doc. 5 at 3. For his part, Duraski states:

> Counsel is unaware of any prosecutorial misconduct. Simply because the prosecutor failed to grant the relief the Defendant sought does not mean he committed misconduct. Counsel denies this allegation.

CIV. Doc. 3 at 2–3.

Determining whether a substantial-assistance motion will be filed is reserved to the government. *United States v. Orozco*, 160 F.3d 1309, 1315 (11th Cir. 1998). The government has the discretion and the power, but not a duty, to file a motion when a defendant has substantially assisted. *Wade v. United States*, 504 U.S. 181, 185–86 (1992). "The substantial assistance business is inherently risky. When a defendant first decides to cooperate, there is no guarantee that the government will ultimately deem his assistance 'substantial.'" *Orozco*, 160 F.3d. at 1315 n.10. "The substantial assistance regime is not a spoils system designed simply to reward a cooperative defendant; it is designed to benefit the government in its prosecution efforts." *Id*. at 1316.

Failure to file a motion related to substantial assistance is restricted to the issue of bad faith. *United States v. Forney*, 9 F.3d 1492, 1502 (11th Cir. 1993). Absent a plea agreement that expressly requires the government to file a substantial-assistance motion, a defendant shall be heard to complain as to the government's failure to file such a motion only upon a showing of the government's unconstitutional or discriminatory motivation, such as race or religion. *Id.* at 1501–03; *Wade*, 504 U.S. at 185–86; *United States v. Nealy*,

232 F.3d 825, 831 (11th Cir. 2000). Generalized allegations of improper motive, as well as allegations that are simply based on the assertion that the defendant indeed supplied substantial assistance, do not suffice to make the defendant's claim reviewable. *Wade*, 504 U.S. at 186; *Forney*, 9 F.3d at 1502 n.5.

Because determination of whether Pittman met the obligations to qualify for a sentence reduction based on substantial assistance was "at the sole discretion of the United States," Pittman's plea agreement did not require the government to file a substantial assistance motion. Pittman points to no facts showing that the government's refusal to file a substantial assistance motion was based on an unconstitutional or discriminatory motive, such as race or religion. Consequently, Pittman fails to support her allegation of prosecutorial misconduct. And because this allegation is unsupported, she demonstrates neither deficient performance by her attorneys nor resulting prejudice. She is entitled to no relief based on this claim of ineffective assistance of counsel.

## C.   Claims of Prosecutorial Misconduct

### 1.   *Government's Failure to File Substantial-Assistance Motion*

Pittman presents a standalone claim that the U.S. Attorney engaged in prosecutorial misconduct by failing to file a substantial-assistance motion for downward departure based on her cooperation with the government. CIV. Doc. 1 at 17, 20. As discussed above, however, Pittman points to no facts showing that the government's refusal to file a substantial-assistance motion was based on an unconstitutional or discriminatory motive. Thus, she fails to support her allegation of prosecutorial misconduct, and she is entitled to no relief on this claim.

Furthermore, on direct appeal, Pittman argued that the government breached the plea agreement by not filing a substantial-assistance motion. The Eleventh Circuit reviewed this claim and found it lacked merit. *United States v. Pittman*, 718 F. App'x 767 (11th Cir. 2017); *see* CRIM. Doc. 94. "The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). If a claim has previously been raised on direct appeal and decided adversely to a defendant, it cannot be relitigated in a collateral attack under § 2255. *See Nyhuis*, 211 F.3d at 1343. Pittman cannot relitigate this claim, which has already been decided against her by the Eleventh Circuit in her direct appeal. The claim is procedurally barred from further review.

### 2.   *Failure to Provide Details Relevant to Substantial Assistance*

Finally, in cursory fashion, Pittman claims that the U.S. Attorney engaged in prosecutorial misconduct by failing to provide details concerning her cooperation with the government, including the arrest of a certain individual, which she says resulted from her cooperation and suggests amounted to substantial assistance. CIV. Doc. 1 at 18. However, the government is not obligated to find that any particular information or action by the defendant constitutes cooperation relevant to the question of substantial assistance. *See Orozco*, 160 F.3d at 1315 n.10. Pittman is entitled to no relief on this cursory claim of prosecutorial misconduct.

On direct appeal, Pittman presented a somewhat related claim that the government failed to satisfy its duty to determine whether she had fulfilled her obligations under the

cooperation agreement and to explain its assessment that substantial assistance had not been rendered. The Eleventh Circuit held there was no controlling caselaw that required the government, when refusing to file a substantial-assistance motion, to discuss the details of a defendant's cooperation or to explain its exercise of discretionary authority in determining that a defendant had not fulfilled her obligations under a cooperation agreement. *United States v. Pittman*, 718 F. App'x 767 (11th Cir. 2017); *see* CRIM. Doc. 94. To the extent Pittman may be claiming the government improperly failed to explain its determination that she had not provided substantial assistance, the issue may not be relitigated in this § 2255 proceeding. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).

## IV.   CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Pittman be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before June 23, 2021**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District

Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc*., 667 F.2d 33 (11th Cir. 1982*). See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 9th day of June, 2021.

  /s/   Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE